# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

TAKOYA DOMINIC CRINER,

               Petitioner,

v.                                                    Case No. 3:21-cv-1160-TJC-LLL

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY GENERAL,

               Respondents.

_____

## ORDER

### I.      Status

Petitioner, an inmate of the Florida penal system, is proceeding on an Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 6). The original Petition was filed on November 19, 2021 (Doc. 1) by counsel who later withdrew. See Order (Doc. 13) (granting counsel's motion to withdraw). Petitioner challenges a 2005 state court (Duval County, Florida) judgment of conviction for two counts of first-degree murder and one count of attempted first-degree murder. Doc. 6 at 2. Petitioner is serving a life sentence. See Fla. Dep't of Corrs., Offender Information Search, available at https://fdc.myflorida.com/OffenderSearch/Search.aspx (last visited Feb. 18, 2025).

Respondents filed a Response (Doc. 9) with exhibits (Docs. 9-1 to 9-90; Ex.), arguing that this case was untimely filed and should be dismissed with prejudice.[1] Petitioner, through counsel, filed a Reply (Doc. 11), in which he argues the case was timely filed or, alternatively, he is entitled to equitable tolling of the statutory limitations period. This case is ripe for review.[2]

## II.    <u>One-Year Limitations Period</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[1] The Court will cite exhibits using the number designations Respondents assign, but page numbers will be those assigned by the Court's electronic case management system.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1), (2).

### III.  **Procedural History**

On May 9, 2005, Petitioner proceeded to a jury trial on two counts of first-degree murder and one count of attempted first-degree murder as charged by indictment. Ex. 4 at 2–3; Ex. 11 at 2. The surviving victim, Gavin Berry, testified on behalf of the State, and Petitioner testified on his own behalf. Ex. 12 at 5, 78; Ex. 16 at 4, 26. As summarized in Petitioner's brief on direct appeal,

Petitioner's and Mr. Berry's accounts differed drastically regarding what precipitated the shooting and who fired the shots. See Ex. 22 at 9–12, 15–17. Mr. Berry testified that Petitioner, who was seated on a couch behind the three victims, unexpectedly opened fire on them. Id. at 9–10. Petitioner, on the other hand, testified that he and the three victims casually "drank beer and smoked marijuana for at least thirty minutes," and then he and Mr. Berry began arguing and fighting over money Petitioner owed Mr. Berry for drugs. Id. at 15–16. "[Mr.] Berry then ran to get a handgun that was sitting on the arm of the couch," so Petitioner tried to flee. Id. at 17. Mr. Berry hit Petitioner on the back of the head with the gun, and the two began "tussling . . . for the gun," during which the "gun went off several times." Id.

On May 14, 2005, the jury returned guilty verdicts on all counts. Ex. 6 at 2–5; Ex. 19 at 42–43. On June 16, 2005, the trial court entered judgment and sentenced Petitioner to three life terms to run concurrently, with a twenty-five-year minimum mandatory sentence for using a firearm. Ex. 7 at 2, 5–8; Ex. 10 at 148; Ex. 21 at 2, 20, 22. Through retained counsel, Tony Axam, admitted pro hac vice, Petitioner sought a direct appeal, raising ten issues, including one for ineffective assistance of trial counsel. Ex. 22 at 2–4. In a written opinion issued on November 3, 2006, the First District Court of Appeal affirmed Petitioner's convictions and sentences. Ex. 25 at 2, 4. The First DCA wrote to address three issues, holding as follows: the trial court did not err in denying Petitioner's

4

motion for judgment of acquittal; the State "presented substantial evidence showing [Petitioner] acted with premeditation"; and Petitioner's ineffective assistance of trial counsel claim "concern[ed] strategic decisions" by counsel and was not subject to review on direct appeal. Id. at 4. The First DCA denied Petitioner's motion for rehearing on December 7, 2006, and issued its mandate on December 27, 2006. Ex. 26 at 2, 4.

On November 8, 2007, Attorney Axam filed in the trial court a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on Petitioner's behalf but styled it "pro se" (2007 Rule 3.850 Motion). Ex. 29 at 2. The 2007 Rule 3.850 Motion, which "merely regurgitated the exact issues raised on direct appeal," Doc. 6 at 20, was dated November 7, 2007, and purportedly was signed by "Takoya Criner," Ex. 29 at 51. Petitioner contends he did not sign the 2007 Rule 3.850 Motion or authorize its filing. Doc. 6 at 20–21; Doc. 11 at 16. The trial court summarily denied Petitioner's 2007 Rule 3.850 Motion on November 26, 2007, finding as follows:

> All the issues raised by [Petitioner] . . . could have, and should have, been litigated before the trial court[] or on direct appeal. Indeed, the motion itself and the District Court of Appeal Opinion affirming [Petitioner's] conviction, reveal that virtually all the issues have already been litigated. Accordingly, the matters raised are procedurally barred.

Ex. 30 at 2.

Before he received the trial court's order summarily denying his 2007

Rule 3.850 Motion, Petitioner attempted to withdraw it by filing a pro se motion to dismiss. Ex. 31 at 2. Petitioner received a copy of the trial court's order denying the 2007 Rule 3.850 Motion the same day he mailed the pro se motion to dismiss. Id. at 3; Ex. 32 at 3, 8. Thus, he filed a pro se motion for reconsideration of the trial court's ruling, explaining that a prison law clerk reviewed the 2007 Rule 3.850 Motion for him when he received it from Attorney Axam on about November 12, 2007, and the law clerk told him the 2007 Rule 3.850 Motion "was insufficient since he could not raise the exact [same] issues he raised on direct [appeal]" in a Rule 3.850 motion. Ex. 32 at 3.

The trial court denied Petitioner's pro se motions to dismiss and for reconsideration. Ex. 1 at 28. Before those orders were issued, Attorney Axam filed a notice of appeal from the trial court's summary denial of the 2007 Rule 3.850 Motion. Ex. 33 at 2–3. Attorney Axam did not file an appellate brief. See Ex. 27 at 2. Proceeding pro se, Petitioner filed his own notice of appeal from the orders denying his motions to dismiss and for reconsideration, and he filed a supporting brief on January 11, 2008.[3] See Attachments (Notice of Appeal, mailed January 11, 2008); Ex. 36 at 9–10. The First DCA docketed all filings in

---

[3] Petitioner's pro se notice of appeal and other relevant documents were not filed as exhibits. The Court takes judicial notice of Petitioner's state court docket and relevant filings. See State v. Criner, No. 2002-CF-6549 (Fla. 4th Cir. Ct.). For ease of reference, the Court attaches relevant filings to this Order. The attached state court filings will be identified in the body of the Order when discussed and cited as "Attachments."

one appeal, assigning case number 1D08-246. Ex. 27 at 2.

On February 18, 2008, the State filed with the First DCA a notice that it would not be filing an answer brief. Ex. 37 at 2. The State mailed a copy of the notice to the pro se Petitioner at his correctional institution. Id. at 3. On April 25, 2008, Petitioner's mother wrote a letter to the clerk of the trial court, asking for copies of materials relevant to Petitioner's "appeals case." See Attachments (letter by Betty R. Criner, dated April 22, 2008, and docketed April 25, 2008); see also Ex. 1 at 27. On June 18, 2008, Petitioner filed a pro se notice of inquiry in the trial court asking about the status of his appeal of the trial court's denial of his 2007 Rule 3.850 Motion and requesting copies of "any orders set down by the court." See Attachments (Notice of Inquiry, mailed June 18, 2008); see also Ex. 1 at 27. On July 25, 2008, the First DCA per curiam affirmed the trial court's orders denying Petitioner's 2007 Rule 3.850 Motion and his motions to dismiss and for reconsideration without a written opinion. Ex. 38 at 2. The First DCA's decision identified Petitioner as a "pro se" appellant. Id. The mandate issued on August 12, 2008. Ex. 39 at 2.

Petitioner retained new counsel, Bernard F. Daley, Jr., four months later, in December 2008. See Doc. 6 at 3. Through Attorney Daley, on December 24, 2008, Petitioner moved the First DCA to recall its mandate and withdraw its decision affirming the trial court's order summarily denying his 2007 Rule 3.850 Motion. Ex. 40 at 2. The First DCA denied Petitioner's motion to recall its

7

mandate on January 6, 2009. Ex. 42 at 2. Attorney Daley also moved for an extension of the two-year statutory timeframe to file a Rule 3.850 motion. Ex. 34 at 2; Ex. 35 at 2. On March 23, 2009, Petitioner filed a second, counseled Rule 3.850 motion (2009 Rule 3.850 Motion). Ex. 1 at 27; Ex. 65 at 65. On April 20, 2009, the trial court denied the 2009 Rule 3.850 Motion as untimely, successive, and procedurally barred. Ex. 44 at 27–28. Specifically, the trial court found as follows:

> Initially, this Court notes that the instant [Rule 3.850] Motion is untimely, in that it was filed more than two years after [Petitioner's] convictions became final. Further, [Petitioner] has previously filed a [Rule] 3.850 Motion for Post Conviction Relief on November 8, 2007, which was denied on its merits and affirmed on appeal through a Mandate issued on August 14 [sic],[4] 2008. Thus, the instant Motion is likewise successive.
>
> Although [Petitioner] attempted to circumvent these procedural bars by arguing in the First [DCA] that his [2007 Rule 3.850 Motion] should be deemed a nullity, the Court declined to make such a finding and affirmed the trial court['s] denial of [Petitioner's 2007 Rule 3.850 Motion]. Since the instant claims could and should have been raised in his [2007 Rule 3.850 Motion], the instant Motion is procedurally barred and constitutes an abuse of process.

Id. Claiming that neither he nor Attorney Daley learned the trial court had denied his 2009 Rule 3.850 Motion until after the appeal time had expired,

---

[4] The mandate issued on August 12, 2008. Ex. 39 at 2.

Petitioner moved to file a belated appeal, id. at 2, 8–10, which the First DCA granted, Ex. 62 at 2–3.[5]

On March 16, 2011, the First DCA issued a written opinion reversing the trial court's order summarily denying Petitioner's 2009 Rule 3.850 Motion as untimely and remanding for further proceedings. Ex. 69 at 5. The First DCA concluded the trial court erred in denying Petitioner's 2009 Rule 3.850 Motion as procedurally barred because, in his 2007 Rule 3.850 Motion, Petitioner raised one claim of ineffective assistance of trial counsel, which the "court apparently overlooked" and which was "never decided on the merits." Id. at 4. The First DCA further found the trial court erred in denying Petitioner's motion for an enlargement of time to file a Rule 3.850 motion and remanded with instructions for the trial court to conduct an evidentiary hearing, if necessary, regarding the motion to extend:

> [Petitioner's] postconviction claims of ineffective assistance of counsel were never decided on the merits. Thus, a subsequent rule 3.850 motion would not be procedurally barred as successive, and the trial court's reason for denying [Petitioner's] motion to extend would be erroneous. . . .
>
> We note that in [Petitioner's] motion to extend, he alleged that his [2007 R]ule 3.850 [M]otion was fraudulent and that he spent the remainder of his two-

---

[5] The First DCA twice relinquished jurisdiction to the trial court to appoint a special master to conduct an evidentiary hearing on Petitioner's petition to file a belated appeal. Ex. 50 at 2; Ex. 58 at 4, 6; Ex. 59 at 2. The special master ultimately recommended Petitioner's petition be granted. Ex. 61 at 4.

> year time period attempting to get his previous motion
> nullified as such. If true, these allegations may
> constitute good cause for needing additional time to file
> a proper motion. Therefore, we conclude that the trial
> court erred in summarily denying [Petitioner's] motion
> as untimely without considering the grounds for the
> extension.

Id. at 5 (internal citations omitted). The mandate issued on April 1, 2011. Ex. 70 at 3.

On remand, the trial court convened a status conference at which the State stipulated Petitioner's 2009 Rule 3.850 Motion "should be deemed timely," and that Petitioner should be permitted to amend the motion. Ex. 1 at 24; Ex. 72 at 22. The trial court accepted the stipulations. Ex. 72 at 22–23. Petitioner, through Attorney Daley, filed an amended Rule 3.850 motion on June 27, 2011. Id. at 3, 5. The amended Rule 3.850 motion remained pending for years, id. at 3, and in August 2015, Petitioner retained new postconviction counsel because Attorney Daley was disbarred, id. at 44–45. On June 16, 2017, Petitioner's new counsel, Rick Sichta and Joe Hamrick, moved to amend one ground raised in the amended Rule 3.850 motion because Attorney Daley failed to properly investigate or develop a record on whether Petitioner's trial counsel was ineffective for failing to hire and call as a witness a crime scene expert who could rebut Mr. Berry's testimony. Id. at 45–46; see also Ex. 73 at 4–5.

The trial court permitted Petitioner to file a second amended Rule 3.850 motion and, on June 15, 2018, conducted an evidentiary hearing on two grounds

of ineffective assistance of trial counsel. Ex. 74 at 2, 7.[6] The trial court denied Petitioner's second amended Rule 3.850 motion, concluding "there [was] no basis to conclude trial [c]ounsel's strategy was defective, and even if it was, there [was] no evidence to suggest the verdict would have been affected." Ex. 73 at 57–61. On July 24, 2020, the First DCA per curiam affirmed the trial court's denial of the second amended Rule 3.850 motion without a written opinion. Ex. 82 at 2. The mandate issued on October 6, 2020. Id. at 4.

Through counsel, Petitioner filed a motion to correct illegal sentence on September 30, 2020. Ex. 84 at 3, 6–10. The trial court dismissed the motion on October 6, 2020. Id. at 3, 27–28. Petitioner moved for rehearing and to file an amended motion to correct illegal sentence and also filed an amended/second motion to correct illegal sentence. Id. at 3, 59; see also Ex. 85 at 100. The trial court denied his motions. Ex. 87 at 39–41; see also Ex. 84 at 3; Ex. 88 at 4. The First DCA per curiam affirmed the trial court's denials without a written opinion on September 17, 2021. Ex. 90 at 2. The mandate issued on November 19, 2021, id. at 4, and Petitioner initiated this habeas action the same day.

## IV.  Analysis

Petitioner argues he timely initiated this habeas action, but even if the Court concludes he did not, he is entitled to equitable tolling because he

---

[6] Petitioner withdrew three of his five grounds. Ex. 74 at 7–8. The State conceded Petitioner was entitled to a hearing on the remaining two grounds. Id. at 9.

allegedly "received abysmal representation" during his state court postconviction proceedings by Attorneys Axam and Daley, both of whom later were disbarred—Axam in 2011 and Daley in 2015. Doc. 6 at 19.

### i. AEDPA Calculation

The parties dispute the date Petitioner's judgment and sentence became final under § 2244. Petitioner maintains his judgment and sentence became final on March 7, 2007, ninety days after the First DCA denied his motion for rehearing on direct appeal. Id. at 18–19. Respondents, on the other hand, argue the operative date is January 8, 2007, thirty days after the First DCA denied Petitioner's motion for rehearing, because the First DCA issued a written opinion, and thus Petitioner was required to seek discretionary review in the Florida Supreme Court, which he did not do. Doc. 9 at 4–5, 14. In his Reply, Petitioner argues he could not have sought discretionary review in the Florida Supreme Court because the First DCA's "relatively short opinion contained no discussion of a complicated or disputed legal question" and did not conflict "with a decision of another District Court of Appeal or of the Florida Supreme Court on the same question of law." Doc. 11 at 5.

A state court judgment becomes final for purposes of AEDPA's one-year statute of limitations at "the conclusion of direct review or the expiration of time for seeking such review." § 2244(d)(1)(A). To determine when the direct review of a petitioner's state court judgment and conviction has ended, federal habeas

courts "must look to the actions taken by the state court and the relevant state law." Chamblee v. Florida, 905 F.3d 1192, 1196 (11th Cir. 2018). In habeas proceedings, federal courts "are bound by a state court's interpretation of its own laws and procedures." Id.

Section 3, article V of the Florida Constitution provides in pertinent part as follows:

> [The Florida Supreme Court] [m]ay review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.

Art. V, § 3(b)(3), Fla. Const. The Florida Supreme Court has interpreted this grant of discretionary subject matter jurisdiction broadly, holding it may review "any decision of a district court that expressly addresses a question of law within the four corners of the opinion itself." Fla. Star v. B.J.F., 530 So. 2d 286, 288 (Fla. 1988). With respect to the last category of cases over which the Florida Supreme Court may invoke discretionary jurisdiction (conflict), "it is not necessary that conflict actually exist for [the court] to possess subject-matter jurisdiction, only that there be some statement or citation in the opinion that hypothetically could create conflict if there were another opinion reaching a contrary result." Id.

13

In the written opinion on Petitioner's direct appeal, the First DCA addressed three points of law, two of which were discussed in the context of the evidence admitted at Petitioner's trial. Ex. 25 at 4. Because the court "addresse[d] a question of law within the four corners of the opinion itself," the Florida Supreme Court had discretionary jurisdiction to review the First DCA's written opinion, regardless of whether a conflict with another district court or the Florida Supreme Court "actually exist[ed]." See Fla. Star, 530 So. 3d at 288. The opinion Petitioner cites in his Reply is inapposite because that case involved an "unelaborated" opinion that "merely cite[d] to a case not pending review in, or not quashed or reversed by" the Florida Supreme Court. See Wells v. State, 132 So. 3d 1110, 1111 (Fla. 2014) (citing with approval Fla. Star, 530 So. 3d at 288). The First DCA's opinion here cannot be described as "unelaborated."

Since the First DCA issued a written opinion in affirming Petitioner's direct appeal, Petitioner was not entitled to the ninety-day window to seek certiorari review with the United States Supreme Court but instead was required to seek review with the Florida Supreme Court within thirty days. Thus, Petitioner's judgment and sentence became final on Monday, January 8, 2007, thirty days after the First DCA denied his motion for rehearing.[7] His

---

[7] The thirtieth day fell on Saturday, January 6, 2007, so Petitioner had until the next business day.

AEDPA limitations period started to run the following day, on Tuesday, January 9, 2007.

When Petitioner filed his pro se 2007 Rule 3.850 Motion on November 7, 2007, 302 days of his one-year AEDPA limitations period had elapsed.[8] His limitations period was tolled during the pendency of the state court proceedings on his 2007 Rule 3.850 Motion, which finally resolved when the First DCA issued its mandate on August 12, 2008. Petitioner's AEDPA clock resumed the following day, Wednesday, August 13, 2008. On that date, Petitioner had sixty-three days remaining in which to file a federal habeas petition. Petitioner's one-year limitations period expired on October 15, 2008, without the filing of another proper tolling motion. Thus, the Court finds that the original Petition, filed on November 19, 2021, was untimely filed.

Petitioner argues that Attorney Daley's filing of the motion to recall the First DCA's mandate "arguably vitiated the finality of the appeal of [his] first postconviction motion," meaning his 2007 Rule 3.850 Motion appeal did not resolve until the First DCA denied his motion to recall mandate on January 6, 2009. Doc. 6 at 22. Although the motion to recall mandate arguably would have tolled the AEDPA limitations period between the date it was filed and the date

---

[8] Attorney Axam filed the 2007 Rule 3.850 Motion on Petitioner's behalf on November 8, 2007, but the certificate of service was dated November 7, 2007. Ex. 29 at 51. The Court gives Petitioner the benefit of the one-day difference since the Motion was styled "pro se."

the First DCA denied it, see Marshall v. Sec'y, Dep't of Corr., No. 8:10-cv-2366-T-23MAP, 2013 WL 2382291, at *2–3 (M.D. Fla. May 30, 2013), aff'd sub nom., 828 F.3d 1277 (11th Cir. 2016), when the motion to recall mandate was filed, the limitations period had already expired. In other words, there was nothing left to toll. See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating that where a state prisoner files postconviction motions in state court after the AEDPA limitations period has expired, those filings cannot toll the limitations period because "once a deadline has expired, there is nothing left to toll"); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like [the petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").[9]

For the reasons stated, the Court concludes Petitioner initiated this action beyond the one-year limitations period.

---

[9] Even under Petitioner's calculation, his limitations period would have expired before he filed his motion to recall mandate. With the benefit of a ninety-day window to seek certiorari review in the United States Supreme Court, Petitioner's judgment and sentence would have become final on March 7, 2007, and his AEDPA limitations period would have started to run the following day, March 8, 2007. His 2007 Rule 3.850 Motion would have been filed after 244 days had run on his federal clock, meaning Petitioner would have had 121 days remaining in which to initiate a federal habeas action after the First DCA issued its August 12, 2008 mandate. That would have made Petitioner's federal filing deadline Friday, December 12, 2008. Attorney Daley did not file the motion to recall mandate until December 24, 2008. See Ex. 27 at 2.

### ii. Equitable Tolling

To overcome the time bar, Petitioner invokes the doctrine of equitable tolling on the ground that he "received abysmal representation, amounting to a constructive abandonment of counsel, by . . . two attorneys who would each later be disbarred for egregious behavior in other cases." Doc. 6 at 19. In the absence of equitable tolling, Petitioner's limitations period expired on October 15, 2008, before he retained Attorney Daley. As such, the Court focuses on Petitioner's assertions solely as they relate to Attorney Axam's conduct.

"When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). The United States Supreme Court established a two-prong test for equitable tolling of the one-year limitations period, requiring that a petitioner "show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007).

An attorney's "negligence or gross negligence [does not constitute] a sufficient extraordinary circumstance all by itself." Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1228 (11th Cir. 2017). Similarly, an attorney's violation of an ethical rule does not by itself suffice. Id. at 1232. To satisfy the "strong burden" on equitable tolling, Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008), the

gravamen of a petitioner's complaint cannot be that his attorney engaged in misconduct, whether described as "garden variety negligence," "gross negligence," or that amounting to "bad faith [or] dishonesty," <u>Holland v. Florida</u>, 560 U.S. 631, 652 (2010); <u>Cadet</u>, 853 F.3d at 1228. Rather, the petitioner must demonstrate that his lawyer effectively abandoned him or acted adversely to his interests, as those terms are understood under "fundamental principles of agency law." <u>Cadet</u>, 853 F.3d at 1229, 1234 ("Abandonment denotes renunciation or withdrawal, or a rejection or desertion of one's responsibilities, a walking away from a relationship."); <u>see also</u> <u>Thomas v. Att'y Gen.</u>, 992 F.3d 1162, 1171, 1181–82 (11th Cir. 2021) (summarizing the Supreme Court's "guidance on how courts should conduct the extraordinary circumstances analysis" in the context of an attorney's conduct).

In <u>Holland</u>, the Supreme Court held the petitioner may have been entitled to equitable tolling based on the following circumstances: the petitioner's court-appointed attorney stopped regularly communicating with him during the pendency of his state postconviction proceedings despite the petitioner's many letters stressing the importance of timely filing a federal habeas petition; the state court denied the petitioner's pro se requests to discharge his attorney "on the perverse ground that petitioner failed to act through appointed counsel"; and the attorney failed to advise the petitioner that the Florida Supreme Court had affirmed the denial of his state postconviction motion with only twelve days

remaining on his AEDPA limitations period. 560 U.S. at 652, 654. See also id. at 659 (Alito, J., concurring). The Court did not conclude as a matter of law that the attorney's conduct warranted equitable tolling, only that the Eleventh Circuit's test was too rigid in that it required a petitioner to show "proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth" when seeking equitable tolling based on an attorney's negligence. Id. at 634, 650–51, 63.

In Thomas, the Eleventh Circuit held the petitioner was entitled to equitable tolling because his attorney—appointed specifically to file a federal habeas petition—"never informed [him] that her goal was to use his habeas action as a 'test case' to challenge AEDPA's limitations period and, to that end, to sacrifice [his] petition's timeliness . . . ." 992 F.3d at 1171, 1183. The court agreed with the district court that the attorney's conduct "extend[ed] well beyond the gross negligence described in Cadet [and] reache[d] into the depths of abandonment." Id. at 1183 (internal punctuation omitted).

If a petitioner demonstrates an extraordinary circumstance, he also must demonstrate a "causal link" between that extraordinary circumstance and the missed federal filing deadline. Cadet, 853 F.3d at 1236 (explaining that an attorney's "bad faith, dishonesty, divided loyalty, [or] mental impairment . . . . can be sufficient if there is a causal link"); see also Maples v. Thomas, 565 U.S. 266, 282–83, 289 (2012) (holding, in the context of procedural default, the petitioner "[could] not be charged with the acts or omissions" of his state

postconviction attorneys who left the firm without advising him or moving to withdraw, effectively leaving him pro se without his or the court's knowledge, causing him to miss his appeal deadline and thereby procedurally defaulting his habeas claims).

Relying primarily on <u>Holland</u> and <u>Thomas</u>, Petitioner argues he is entitled to equitable tolling because Attorney Axam (1) engaged in conduct involving "bad faith [or] dishonesty" by forging (or directed the forging of) his signature on his 2007 Rule 3.850 Motion and filing it without his express permission and (2) abandoned him by failing to timely advise him of the First DCA's decisions on direct appeal and on appeal from the trial court's denial of his 2007 Rule 3.850 Motion.[10] Doc. 6 at 21, 23–24; <u>see also</u> Doc. 11 at 9, 11–12.

---

[10] Petitioner also asserts, "The same inequities that prompted the State's Attorney's Office and the trial court to permit him" to proceed on his belated 2009 Rule 3.850 Motion justify application of the doctrine of equitable tolling for purposes of his federal habeas petition. Doc. 6 at 20. This argument is without merit. The legal standard for equitable tolling is different and far more rigorous than the standard for filing a belated Rule 3.850 motion. <u>See, e.g.</u>, <u>State v. Boyd</u>, 846 So. 2d 458, 460 (Fla. 2003) (holding a convicted prisoner may satisfy the "good cause" standard for filing a belated motion for postconviction relief simply by showing he "was transferred to another prison and his legal files had not arrived").

Additionally, Petitioner relies on an unpublished Fifth Circuit opinion. Doc. 6 at 24 (citing <u>Jimenez v. Butcher</u>, 839 F. App'x 918 (5th Cir. 2021)). In <u>Jimenez</u>, the court held the petitioner was entitled to equitable tolling because his first postconviction lawyer lied to him for over seven months about the status of a state proceedings, a deception that was "the reason that nearly eleven months of the one-year [AEDPA limitations] period had been eaten up," and his second lawyer delayed in sending him documents he needed to file his habeas petition. <u>Jimenez</u>, 839 F. App'x at 920. The court reasoned "the combined deception and tardiness of counsel constitute[d] extraordinary circumstances," which directly caused the petitioner to miss his filing

In support of the latter argument, which Petitioner raises for the first
time in his Reply, Petitioner provides his own affidavit and an affidavit from
his sister-in-law, Pamila Davis, who participated in discussions with Attorney
Axam. Doc. 11 at 9, 15, 70. In his own affidavit, Petitioner avers he learned of
the First DCA's decision on direct appeal when Attorney Axam mailed him a
draft of the 2007 Rule 3.850 Motion in November 2007. Id. at 16. He claims to
have learned of the First DCA's decision on appeal from the denial of his 2007
Rule 3.850 Motion sometime in December 2008, "at which point he and his
family scrambled to find new postconviction counsel." Id.

Both Petitioner and Ms. Davis aver they had a phone conversation with
Attorney Axam about the draft of the 2007 Rule 3.850 Motion before Attorney
Axam filed it. Id. at 16, 71. During that phone call, they "expressed [their]
frustration with Attorney Axam for his failure to timely inform [them] of the
[First] DCA's decision [on direct appeal]," and they informed Attorney Axam
that "he was fired" because the "postconviction motion [he] prepared was a
regurgitation of the same issues and arguments previously raised on direct
appeal."[11] Id.

_____

deadline. Id. Not only is Jimenez not binding, but the facts are readily distinguishable,
for reasons articulated later in this Order.

[11] The timeline of events described by Petitioner and Ms. Davis in their affidavits
differs from what Petitioner represented to the trial court when attempting to
withdraw his 2007 Rule 3.850 Motion. In the trial court, Petitioner asserted he had
not received a copy of the 2007 Rule 3.850 Motion until November 12, 2007, after

With respect to Petitioner's first argument ("bad faith"), accepting for purposes of these proceedings that Attorney Axam's conduct was "unethical, fraudulent, and incompetent," Doc. 6 at 21, the argument that an attorney's misconduct alone justifies equitable tolling has been soundly rejected, Holland, 560 U.S. at 651–52; Thomas, 992 F.3d at 1182. See also Cadet, 853 F.3d at 1234 ("Negligence, however gross, is not the same as abandonment."). This is so even when an attorney violates an ethical rule or engages in conduct that can be described as grossly negligent or involves bad faith or dishonesty. Id. at 1232–33 (explaining that "[p]rofound problems plague [the] position" that an attorney's ethical violation entitles his client to equitable tolling).

Moreover, even if Attorney Axam acted in "bad faith" in connection with Petitioner's 2007 Rule 3.850 Motion, that conduct did not directly cause Petitioner to miss his federal filing deadline. If anything, Attorney Axam's unauthorized filing of the 2007 Rule 3.850 Motion ultimately benefitted Petitioner vis-à-vis his federal remedies because that Motion tolled Petitioner's AEDPA limitations with sixty-three days remaining in which to file a federal habeas petition. Petitioner avers he fired Attorney Axam in November 2007, when his state postconviction proceedings were still pending and his AEDPA limitations period was tolled. Thus, unlike the petitioners in Holland and

---

Attorney Axam filed it, and he did not speak with Attorney Axam until November 26, 2007. Ex. 32 at 3.

<u>Thomas</u>, Petitioner was not at the mercy of an appointed attorney to file a federal habeas petition on his behalf.

With respect to Petitioner's second argument ("abandonment"), Petitioner faults Attorney Axam for not advising him of the First DCA's decisions on direct appeal and on appeal from the trial court's denial of his 2007 Rule 3.850 Motion. Doc. 11 at 9–10. Even if Attorney Axam had not immediately notified Petitioner of the First DCA's opinion on direct appeal, that conduct did not cause Petitioner to miss the federal filing deadline. Petitioner concedes he learned about the First DCA's decision on direct appeal in early November 2007, when he received a draft of the 2007 Rule 3.850 Motion from Attorney Axam. <u>Id.</u> at 16. When the 2007 Rule 3.850 Motion was filed, Petitioner had sixty-three days remaining in which to file a federal habeas petition, and he was not reliant on Attorney Axam to file a federal habeas petition given Petitioner had fired him.

And since Petitioner fired Attorney Axam before the conclusion of his appeal from the denial of the 2007 Rule 3.850 Motion, Attorney Axam had no obligation to communicate with, advise, or update Petitioner in connection with those proceedings. It appears Petitioner argues Attorney Axam remained his counsel of record during the pendency of his appeal from the denial of the 2007 Rule 3.850 Motion because Attorney Axam filed a notice of appeal. <u>See</u> <u>id.</u> at 11,

17.[12] However, Attorney Axam did not submit a merits brief, and the relevant filings in the state court demonstrate Petitioner was in fact proceeding pro se: Petitioner filed his own pro se notice of appeal and merits brief; in its notice that it would not be filing an answer brief, the State certified that it had mailed a copy of the filing to the pro se Petitioner at his place of incarceration, not to Attorney Axam; Petitioner's mother inquired with the clerk of the trial court about the status of his pro se appeal; Petitioner filed a pro se notice of inquiry in the trial court, asking whether there had yet been a disposition made in his pro se appeal from his "Rule 3.850 [Motion]"; and the First DCA's July 25, 2008 opinion indicates Petitioner was proceeding "pro se." See Ex. 1 at 27–28; Ex. 27 at 2; Ex. 36 at 2; Ex. 37 at 3; Ex. 38 at 2; see also Attachments (Notice of Appeal, mailed January 11, 2008; letter by Betty R. Criner, dated April 22, 2008, and docketed April 25, 2008; Notice of Inquiry, mailed June 18, 2008).

Unlike the petitioner in Holland, whose pro se requests to discharge his court-appointed attorney were denied, Petitioner successfully discharged Attorney Axam and chose to proceed pro se on appeal from the denial of his 2007 Rule 3.850 Motion. Accordingly, he had the "right personally to receive

---

[12] At the First DCA's request, Attorney Axam also filed a docketing statement. See Ex. 27 at 2. See also Attachments (Docketing Statement and Notice of Appearance of Counsel, docketed February 25, 2008). In the docketing statement, Attorney Axam indicated the nature of the case was a "[d]irect [a]ppeal," suggesting some confusion as to why he was asked to submit the form. See id.

notice" of any filings or rulings related to his proceedings. Cf. Maples, 565 U.S. at 271, 288 (noting the petitioner was "left unrepresented at a critical time for his state postconviction [proceedings with no] . . . clue of any need to protect himself pro se" and with no "right personally to receive notice" of any filings or rulings). For the reasons stated, the Court finds Petitioner does not show that "some extraordinary circumstances stood in his way and prevented timely filing" of his federal habeas action. See Lawrence, 549 U.S. at 336.

Not only does Petitioner fail to demonstrate extraordinary circumstances caused him to miss his federal habeas deadline, but he does not demonstrate he acted with reasonable diligence in pursuing federal remedies before his AEDPA limitations period expired. Between July 25, 2008, when the First DCA issued its opinion on appeal from the denial of the 2007 Rule 3.850 Motion, and October 15, 2008, when Petitioner's limitations period expired, Petitioner took no action to file or preserve his right to file a federal habeas action, either pro se or through counsel. Contrary to the position he takes in support of his Petition, Petitioner, through Attorney Daley, explained in his initial brief on appeal from the denial of his 2009 Rule 3.850 Motion that he waited until December 2008 to hire Attorney Daley because of financial constraints, not because he was unaware the First DCA had rendered a decision on his 2007 Rule 3.850 Motion. Ex. 66 at 12. He asserted as follows:

> In December of 2008, [Petitioner's] family

mustarded [sic] the necessary resources to retain undersigned counsel to review the record . . . provide them with an opinion as to what, if any, potential grounds and avenues for seeking post-conviction relief remained available. If such grounds and avenues existed, counsel agreed to prepare and file the requisite pleadings necessary to initiate those remedies as quickly as was reasonably possible, and to represent him throughout the resolution of the post-conviction proceedings.

. . . .

Due to the fact that [Petitioner's] family had only amassed the funds to retain undersigned counsel with only days remaining before the scheduled expiration of the two-year time period for filing a new [R]ule 3.850 [motion], coupled with the fact that counsel believed there was a strong factual and legal basis for seeking to recall the mandate . . . . undersigned counsel filed an emergency motion to recall the mandate [on December 24, 2008].

Id. at 12–13. Attorney Daley explained that his review of Petitioner's file revealed Petitioner had state postconviction remedies still available to him; there was no mention of federal habeas remedies:

Upon reviewing the summary of the facts and procedural history of the case . . . undersigned counsel discovered numerous facts that supported no less than four independent, meritorious IAC [ineffective assistance of counsel] claims occurring prior to and during trial, that were cognizable under [R]ule 3.850(a). Counsel also related his opinion to [Petitioner] that a newly-filed 3.850 motion should not be deemed successive, as the lower court had never reached the merits of the IAC claim [raised in] the original motion.

Id. at 12.

26

Any steps Petitioner took in the trial court to undo or claw back the unauthorized filings Attorney Axam submitted were done to preserve his state postconviction remedies, not his federal habeas remedies. Additionally, when Petitioner retained a new attorney—Daley—he did so to pursue state postconviction remedies, not federal ones. See Ex. 47 at 3 (representing in his reply supporting his petition to file a belated appeal that Petitioner hired Attorney Daley just before the two-year-deadline to pursue state postconviction relief); Ex. 52 at 4 (representing in a supplement to his petition to file a belated appeal that he hired Attorney Daley to seek postconviction relief in the state courts). While Petitioner certainly deserved better representation from his lawyer, unfortunately he is not entitled to equitable tolling.

For the foregoing reasons, this action is untimely, and under the circumstances, Petitioner does not meet the standard for equitable tolling. Nor does he assert actual innocence as a gateway to avoid enforcement of the one-year limitations period. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

Accordingly, it is **ORDERED AND ADJUDGED**:

1.    The Amended Petition (Doc. 6) is **DISMISSED with prejudice** as untimely.

2.    The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.   If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[13]

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of March, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-6
c:
Takoya Criner
Counsel of Record

---

[13] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.